IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

TORAS EMES ACADEMY OF          *
MIAMI, INC. d/b/a Yeshiva      *
Toras Chaim Toras Emes,        *
                               *
        Plaintiff,             *
                               *        CV 124-038
     v.                        *
                               *
INFLOW SOLUTIONS GA, LLC,      *
                               *
        Defendant/Third-       *
        Party Plaintiff,       *
                               *
     v.                        *
                               *
ADVANCED COATING SERVICES,     *
INC.,                          *
                               *
        Third-Party            *
        Defendant.             *

                        O R D E R

     Presently pending before the Court is Toras Emes Academy of
Miami, Inc.'s ("TEAM") motion to dismiss Inflow Solutions Ga, LLC's
("Inflow") counterclaims for breach of contract and breach of the
covenant of good faith and fair dealing (Doc. 14); Advanced Coating
Services Inc.'s ("ACS") motion to dismiss Inflow's third-party
complaint (Doc. 31); and Inflow's motion for leave to file an
amended third-party complaint and summons (Doc. 43).  For the
following reasons, TEAM's motion to dismiss is **GRANTED**, ACS's

motion to dismiss is **GRANTED**, and Inflow's motion to amend its third-party complaint and summons is **DENIED**.

## I. BACKGROUND

This action arises out of two agreements: a contract for roofing and various other services between TEAM and Inflow (the "Agreement"), and a subcontract for performance of the services promised therein between Inflow and ACS (the "Subcontract"). (Doc. 1, at 1; Doc. 13, at 2-3.)

### A. The Agreement Between TEAM and Inflow

Under the Agreement, Inflow was to perform roofing and other building improvement services for TEAM in exchange for $400,000. (Doc. 1, at 3.)  TEAM is a private educational institution located in Miami Beach, Florida, and Inflow is a Georgia limited liability company. (Id. at 1-2; Doc. 10, at 3.)  According to TEAM, after Inflow performed its contractual obligations and TEAM paid Inflow for its services, TEAM discovered Inflow's work was defective and not in compliance with the terms of the Agreement. (Doc. 1, at 4.)  Upon discovering this, TEAM reached out to Inflow several times without response and, ultimately, incurred various damages trying to remedy the defects. (Id. at 5-7.)

As a result, TEAM brought this action against Inflow for breach of contract and violation of Florida code on April 3, 2024. (Id. at 6-8.)  Inflow responded on May 22, 2024, answering the

2

complaint and asserting counterclaims against TEAM for breach of contract (Count I), breach of the covenant of good faith and fair dealing (Count II), and trespass to chattels (Count III). (Doc. 10, at 10-13.) TEAM then moved to dismiss Counts I and II of Inflow's counterclaim (Doc. 14), and Inflow responded in opposition to TEAM's motion to dismiss (Doc. 22).[1]

## B. The Subcontract Between Inflow and ACS

In addition to its counterclaims, Inflow filed a third-party complaint against ACS on June 5, 2024, asserting claims for negligence and contribution, indemnity, and breach of contract. (Doc. 13, at 4-7.) According to Inflow, after entering the Agreement with TEAM, Inflow subcontracted with ACS to perform its obligations under the Agreement. (Id. at 2-3.) Inflow alleges that, pursuant to the Subcontract, ACS performed all of the allegedly defective work referenced in TEAM's complaint; thus, ACS may be liable to Inflow for all or part of TEAM's claims against Inflow. (Id. at 3.) ACS responded, arguing the third-party complaint should be dismissed for insufficient process because the wrong party was named and lack of personal jurisdiction against both the named and correct party. (Doc. 31-1, at 1.) Inflow responded in opposition (Doc. 44), and ACS replied in support (Doc.

---

[1] TEAM does not move to dismiss Count III of Inflow's counterclaim and has not otherwise filed an answer. Nonetheless, TEAM may timely file an answer as to Count III upon the entry of this Order, as its deadline to file an answer has been tolled pending the resolution of its partial motion to dismiss. See Dotson v. DISH Network, L.L.C., No. 2:19-CV-21, 2019 WL 3483806, at *3 (S.D. Ga. July 31, 2019).

48).  Inflow also filed a motion to amend its third-party complaint and summons to correct the insufficient process.  (Doc. 43.)  All motions are now ripe for the Court's review.

## II. TEAM'S MOTION TO DISMISS

TEAM moves to dismiss Inflow's counterclaims for breach of contract (Count I) and breach of the covenant of good faith and fair dealing (Count II) pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. 14.)

### A. Legal Standard

In considering a motion to dismiss under Rule 12(b)(6), the Court tests the legal sufficiency of the complaint.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), *overruled on other grounds by* Davis v. Scherer, 468 U.S. 183 (1984).  Pursuant to Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of both the claim and the supporting grounds.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted).  Although "detailed factual allegations" are not required, Rule 8 "demands more than an unadorned, the – defendant – unlawfully – harmed - me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

A plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 545. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). The Court need not accept the pleading's legal conclusions as true, only its well-pleaded facts. Id. at 679. Furthermore, "the court may dismiss a complaint pursuant to [Rule 12(b)(6)] when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993) (citing Exec. 100, Inc. v. Martin Cnty., 922 F.2d 1536, 1539 (11th Cir. 1991)). Allegations in a complaint must be taken as true and "read . . . in the light most favorable to the plaintiffs." Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted).

**B. Discussion**

TEAM argues that both Count I and Count II of Inflow's counterclaims fail because the alleged breach is not provided for in the Agreement. (Doc. 14, at 3-7.) Before addressing the merits of TEAM's arguments, the Court notes it is undisputed the Agreement provided by TEAM (Doc. 1-1) is an accurate representation of the Agreement. (Doc. 1, at 3; Doc. 10, at 4.) The Agreement provides it "shall be governed by, construed, interpreted and enforced in

accordance with the laws of the State of Georgia . . . ."  (Doc. 1-1, at 6.)

1. Count I: Breach of Contract

Inflow alleges TEAM breached the Agreement by "disallow[ing] work to be performed . . . and . . . fail[ing] to provide reasonable notice of its unilateral decisions to disallow work," causing Inflow to incur additional expenses for lodging out of town workers.  (Doc. 10, at 8-9.)  TEAM argues this claim should be dismissed because such conduct violated no provision in the Agreement, and, further, the allegations are contradicted by the Agreement's terms.  (Doc. 14, at 4.)  The Court agrees with TEAM.

Failing to allege what contract provision is breached by the alleged actions is grounds for dismissal of a breach of contract claim.  Adr1assist, LLC v. Lima One Cap., LLC, 580 F. Supp. 3d 1293, 1297 (N.D. Ga. 2022) (citing Est. of Bass v. Regions Bank, Inc., 947 F.3d 1352, 1358 (11th Cir. 2020) (finding plaintiff failed to state a claim because it failed to "allege[ ] any general or specific provision of any contract that [the defendant] might have breached")).  Inflow makes no attempt to identify any provision of the Agreement that TEAM's alleged conduct breached, nor is the Court able to identify any provision upon its own review of the Agreement.[2]  (Doc. 13, at 6-7; Doc. 22, at 2-4.)  Thus, the

---

[2] "While we must accept as true all of [a plaintiff's] well-pleaded allegations, when an exhibit attached to the [pleadings] contradicts the general and conclusory allegations of the pleading, the exhibit governs."  Durham v. Aerial Funding, LLC, No. 21-13847, 2022 WL 2388423, at *5 (11th Cir. July 1, 2022)

Court finds Inflow fails to state a claim for breach of contract. TEAM's motion to dismiss Count I of Inflow's counterclaim is therefore **GRANTED.**

    2. <u>Count II: Breach of Covenant of Good Faith and Fair Dealing</u>

    Inflow also brings a counterclaim for breach of the covenant of good faith and fair dealing based on the same conduct as Count I. (Doc. 10, at 11-12.) TEAM argues this claim fails because the Agreement does not contain a provision to which the covenant can be applied. (Doc. 14, at 4-6.)

    Under Georgia law, "[e]very contract implies a covenant of good faith and fair dealing in the contract's performance." <u>Secured Realty Inv. v. Bank of N. Ga.</u>, 725 S.E.2d 336, 339 (Ga. Ct. App. 2012) (citation omitted). This implied covenant "modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms <i>de facto</i> when performance is maintained <i>de jure</i>." <u>Alan's of Atlanta, Inc. v. Minolta Corp.</u>, 903 F.2d 1414, 1429 (11th Cir. 1990) (citations omitted) (applying Georgia law).

    Importantly, "[t]he implied covenant modifies and becomes a part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions it modifies and

---

(citations and internal quotation marks omitted) (alterations adopted). Notably, the Agreement expressly contemplates potential delays in performance, but it does not prohibit unilateral delays by TEAM, nor does it mention lodging expenses relating to such or a duty to give Inflow advance notice in the event of a delay. (Doc. 1-1, at 4.)

therefore cannot provide an independent basis for liability." Secured Realty Inv., 725 S.E.2d at 339 (citation omitted). In other words, "there is no independent cause of action for breach of the covenant of good faith and fair dealing under Georgia law." Owens v. Pineland Mental Health, Mental Retardation & Substance Abuse Servs., No. 2:11-cv-196, 2012 WL 2887007, at *4 (S.D. Ga. July 13, 2012) (citation omitted). Thus, because Inflow fails to state a breach of contract claim, Inflow's breach of the covenant of good faith and fair dealing claim also fails as a matter of law. See Alan's of Atlanta, 903 F.2d at 1429 (holding plaintiff failed to state claim for breach of covenant of good faith and fair dealing when it did not allege "any explicit term in its contracts with [the defendant] was breached"). TEAM's motion to dismiss Count II of Inflow's counterclaim is therefore **GRANTED**.

### III. ACS'S MOTION TO DISMISS

Also before the Court is ACS's motion to dismiss Inflow's third-party complaint both because the incorrect party was named in the summons and for lack of personal jurisdiction. (Doc. 31-1, at 1-2.) Specifically, ACS contends "ACS, Inc.," the party named in the summons, was dissolved in 2011 and has never carried on business. (Id. at 3.) Rather, it was ACS, the sole proprietorship owned by Laurence P. Barry III ("Barry"), that was party to the Subcontract from which this action arises. (Id. at

1, 9.)  ACS also contends that, even if a new summons were issued naming the correct Defendant, the claim would fail because the Court lacks personal jurisdiction over ACS and Barry.[3]  (<u>Id.</u> at 7-13.)  For the reasons discussed below, the Court finds it lacks personal jurisdiction and therefore does not address the improper service arguments.

**A. Legal Standard**

Claims against third-party defendants are subject to the same personal jurisdiction requirements as traditional claims.  <u>See e.g.</u>, <u>Marival, Inc. v. Planes, Inc.</u>, 302 F. Supp. 201 (N.D. Ga. 1969) (requiring personal jurisdiction over third-party defendant for third-party claim to go forward).  "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant."  <u>Morris v. SSE, Inc.</u>, 843 F.2d 489, 492 (11th Cir. 1988) (citations omitted).  The facts presented in the

---

[3] ACS indicates it will accept service of an amended summons with the correctly named party, and Inflow has moved for leave to amend its third-party complaint and summons to correct this error. (Doc. 31-1, at 7; Doc. 40.)  Under Federal Rule of Civil Procedure 15(a)(2), a party may amend its pleading with the Court's leave, which should be given freely.  However, "[i]f a complaint as amended is still subject to dismissal, leave to amend need not be given." <u>Halliburton & Assocs., Inc. v. Henderson, Few & Co.</u>, 774 F.2d 441, 444 (11th Cir. 1985) *overruled on other grounds by* <u>Rodriguez de Quijas v. Shearson/Am. Exp., Inc.</u>, 490 U.S. 477 (1989).  Because, for the reasons expanded upon below, the Court finds a lack of personal jurisdiction over "ACS, Inc.," ACS, and Barry, Inflow's amendment would be futile.  Thus, Inflow's motion for leave to file an amended third-party complaint and summons (Doc. 43) is **DENIED**.  <u>See</u> <u>Burger King Corp. v. Weaver</u>, 169 F.3d 1310, 1320 (11th Cir. 1999) ("This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal.") (citations and internal quotation marks omitted).)

plaintiff's complaint are taken as true to the extent they are uncontroverted.  <u>Foxworthy v. Custom Tees, Inc.</u>, 879 F. Supp. 1200, 1207 n.10 (N.D. Ga. 1995).  If, however, the defendant submits affidavits challenging the allegations in the complaint, the burden shifts back to the plaintiff to produce evidence supporting jurisdiction.  <u>Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.</u>, 593 F.3d 1249, 1257 (11th Cir. 2010).  "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff."  <u>Id.</u> (citation omitted).

To determine whether a nonresident defendant is subject to personal jurisdiction in Georgia, the Court must perform a two-part analysis.  <u>Id.</u> at 1257-58.  First, the Court must decide whether the exercise of personal jurisdiction is proper under Georgia's long-arm statute, O.C.G.A. § 9-10-91.  <u>Id.</u>  Next, the Court must determine whether there are sufficient "minimum contacts" with the forum state to satisfy the Due Process Clause of the Fourteenth Amendment.  <u>Id.</u>; <u>Int'l Shoe Co. v. Washington Office of Unemployment Comp. & Placement</u>, 326 U.S. 310, 316 (1945).

The Eleventh Circuit has held that "the Georgia long-arm statute does not grant courts in Georgia personal jurisdiction that is coextensive with procedural due process," but instead "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from

10

the demands of procedural due process." <u>Diamond Crystal</u>, 593 F.3d at 1259. "[C]ourts must apply the specific limitations and requirements of O.C.G.A. § 9-10-91 literally and must engage in a statutory examination that is independent of, and distinct from, the constitutional analysis to ensure that both, separate prongs of the jurisdictional inquiry are satisfied." <u>Id.</u> at 1263.

**B. Discussion**

ACS argues the Court should dismiss Inflow's third-party complaint pursuant to Rule 12(b)(2) because neither ACS, Inc., ACS, nor Barry are subject to personal jurisdiction in Georgia. (Doc. 31-1, at 4-13.) In support of this argument, ACS contends it does not maintain any offices or accounts in the state of Georgia, has no employees who reside in Georgia, and has never solicited nor conducted any business outside of the state of Florida. (Doc. 31-2, at 3.) As to Barry personally, ACS contends Barry's only contacts with the state of Georgia were completely separate from the transaction giving rise to this suit. (Doc. 31-1, at 8-9.) Specifically, Barry traveled to Georgia once for work when, after seeing his work done pursuant to the Agreement, Mr. Driscoll, Inflow's representative, acting in his personal capacity, hired Barry to paint his home in Augusta, Georgia. (<u>Id.</u>) Barry also traveled to Atlanta twice on personal trips decades ago. (<u>Id.</u>) Finally, as to "ACS, Inc.," ACS contends it no longer exists and has never carried on business anywhere. (<u>Id.</u> at 3.)

Inflow, however, asserts the Court has personal jurisdiction over ACS and Barry pursuant to subsection one of the Georgia long-arm statute.[4] (Doc. 44, at 2.) Inflow argues a number of Barry, acting as an agent of ACS, and ACS's contacts with Inflow support the exercise of personal jurisdiction over ACS and Barry because Inflow is a Georgia company. (Id. at 2-4.) These contacts include Barry, as an agent of ACS, (1) meeting with Inflow's representative, (2) subcontracting with Inflow, (3) accepting payment from Inflow, and (4) engaging in negotiations with Inflow. (Id.) Moreover, Inflow claims that exercising personal jurisdiction over ACS through Barry's contacts while acting as ACS's agent comports with the due process requirements of the United States Constitution. (Id. at 4-5.)

1. <u>Personal Jurisdiction Under Georgia's Long-Arm Statute</u>

As noted above, to determine whether it can exercise personal jurisdiction, the Court must first examine whether the exercise of personal jurisdiction is proper under Georgia's long-arm statute.

ACS contends there is no personal jurisdiction under Georgia's long-arm statute. (Doc. 31-1, at 7-12.) Inflow contends jurisdiction is proper under subsection one of the long-arm statute

---

[4] Inflow does not address personal jurisdiction as to ACS, Barry, and "ACS Inc." independently. However, Inflow seeks to amend its summons and third-party complaint to add ACS and Barry as defendants, and its response points only to conduct of ACS and Barry as grounds for personal jurisdiction under the Georgia long-arm statute. (Doc. 44, at 3-4.) Thus, because Inflow does not allege any contact between "ACS, Inc." and the state of Georgia, the Court finds it does not have personal jurisdiction over "ACS, Inc.". Therefore, the Court focuses its analysis on the conduct of ACS and Barry.

because ACS transacted business in Georgia.  (Doc. 44, at 1.)  The Georgia long-arm statute provides:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he were a resident of this state, if in person or through an agent, he or she: (1) Transacts any business within this state[.]

O.C.G.A. § 9-10-91(1).  To meet the "transacts any business" prong of the Georgia long-arm statute, a nonresident defendant must purposefully do some act or consummate some transaction in Georgia. Diamond Crystal, 593 F.3d at 1264 (citing Aero Toy Store, LLC v. Grieves, 631 S.E.2d 734, 736-37 (Ga. Ct. App. 2006)).

Based on the record before the Court, under a literal interpretation of the long-arm statute, Barry transacted business in Georgia on behalf of ACS.  Barry negotiated business transactions with a Georgia company, emailed a quote to a Georgia company, entered into an agreement and worked with a Georgia company on the underlying project over several weeks, and derived revenue from a Georgia company.  (Doc. 31-2, at 2-3.)  Nothing in subsection one of the long-arm statute "requires the physical presence of the nonresident in Georgia or minimizes the import of a nonresident's intangible contacts with the State." Innovative Clinical & Consulting Servs., LLC. v. First Nat'l Bank of Ames, 620 S.E.2d 352, 355 (Ga. 2005); see Power Guardian LLC v. Directional Energy Corp., 904 F. Supp. 2d 1313, 1320 (M.D. Ga.

2012) (finding intentional sale of products to, electronic and personal contact with, and acceptance of payment from a Georgia company sufficient to constitute "any business" despite defendant never entering the state).  Moreover, while not directly tied to the transaction at issue, Barry traveled to and completed work in the state of Georgia as part of a transaction that spawned from his work on behalf of ACS pursuant to the Subcontract.  (Doc. 31-2, at 3.)  Therefore, while ACS and Barry largely lack a physical presence in Georgia, their contacts with the state, in totality, are sufficient to satisfy the requirements of O.C.G.A. § 9-10-91(1).

### 2. Constitutional Requirements

Having found that Georgia's long-arm statute permits the exercise of personal jurisdiction, the Court must now address the due process component of the jurisdictional analysis.  "The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments imposed by foreign sovereigns." Diamond Crystal, 593 F.3d at 1267 (citation omitted).  Due process requires that (1) a nonresident defendant has certain minimum contacts with the forum state and (2) the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"  Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984)).

a. *Minimum Contacts*

To satisfy the minimum contacts analysis, Inflow must demonstrate that ACS or Barry "purposefully availed" themselves to the protection and laws of the state of Georgia, such that they "should reasonably anticipate being haled into court" here.  Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985)). At the heart of the inquiry is the notion of "fair warning."  Id. The fair warning requirement is met when a nonresident defendant "deliberately engage[s] in significant activities within [the forum] state or create[s] continuing obligations with residents of the forum."  Id. at 1268 (citing Burger King, 471 U.S. at 480). Put differently, the defendant must purposefully establish contacts with the forum state, and there must be a significant nexus between those contacts and the litigation.  Id. at 1267.

ACS argues the Court does not have personal jurisdiction over ACS or Barry personally because neither has systematic and continuous contacts with the state of Georgia, neither has purposefully availed themselves of the benefits of Georgia's laws, and Barry's contacts with the forum state do not give rise to the cause of action.  (Doc. 31-1, at 12-14.)  Inflow argues by entering the Subcontract with a Georgia company, ACS established continuing obligations in Georgia and had a fair warning of being haled to court in Georgia.  (Doc. 44, at 4-5.)

15

ACS is a foreign company that does not have offices or employees in Georgia, does not solicit business in Georgia, and has never conducted business in Georgia. (Doc. 31-2, at 3.) Although ACS entered the Subcontract with a Georgia company, this transaction, without more, is insufficient to satisfy the due process requirements. In Diamond Crystal, the Eleventh Circuit noted that entering a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test. 593 F.3d at 1267; see also Burger King, 471 U.S. at 478-79 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Instead, when inspecting the contractual relationship for minimum contacts, courts must focus on the substance of the transaction including "prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing." Id. (citation omitted). The focus must be on whether the nonresident defendant "deliberately engaged in significant activities within a state or created continuing obligations with residents of the forum." Id. at 1268 (citing Burger King, 471 U.S. at 480). "This focus ensures that a defendant will not be subject to jurisdiction based solely on 'random,' 'fortuitous,' or 'attenuated' contacts." Burger King, 471 U.S. at 475 (citations omitted).

Inflow relies on Diamond Crystal to support its position that the Court has personal jurisdiction over ACS. (Doc. 44, at 4-5.) In that case, the Eleventh Circuit found the defendant established sufficient minimum contacts "when it purposefully carried on a substantial and ongoing relationship with a Georgia manufacturer, specified delivery by 'customer pickup' in Savannah, took and transferred legal title to product in Savannah, and sent payments to Savannah on twelve of the fourteen transactions." Diamond Crystal, 593 F.3d at 1267. The Eleventh Circuit noted that "each individual transaction involved meaningful contact with Georgia, and, by purposefully engaging in fourteen transactions in just six months, [the defendant] established a substantial and ongoing relationship with a Georgia manufacturer." Id. at 1269. Under the present facts, there is simply no similar evidence of a substantial and ongoing relationship necessary to establish personal jurisdiction.

While ACS admittedly completed one project for Inflow in Florida prior to the one giving rise to this action, Inflow fails to present any evidence suggesting ACS regularly contracts with Georgia residents or has continuing obligations to Inflow. Rather, based on the allegations, it appears Inflow sought out ACS to perform an isolated project in Florida and, upon concluding that work, asked ACS to complete one additional isolated project in Florida. (Doc. 31-2, at 2.) This is not a case where ACS reached

17

out to a Georgia resident or had knowledge at the time of contracting that the work had any relation to Georgia. ACS advertised its business as exclusively serving Florida; Inflow received ACS's information from a Florida-based company; all face-to-face communications and work were performed in Florida; payment was made and received in Florida; and all communications on ACS's behalf took place in Florida. (Doc. 31-3, at 9; Doc. 31-2, at 2-3.) The only aspect of the Subcontract that involved the state of Georgia was the fact that Inflow is a Georgia company, which is not enough for personal jurisdiction.

Aside from the contractual relationship at issue, the only contacts ACS or Barry had with Georgia were the project Barry personally completed for Mr. Driscoll in Georgia, and Barry's two personal trips to Atlanta years prior. (Doc. 31-2, at 3.) However, these contacts are exactly the type of fortuitous and attenuated contacts that do not satisfy due process, and Inflow does not argue otherwise. (See Doc. 44.) Barry's one-off project cannot amount to "significant activity" and thus does not provide the minimum contacts necessary to satisfy the due process requirements. Moreover, while the work Barry performed for Mr. Driscoll spawned from his work for ACS under the Subcontract, the transaction was wholly separate from the transaction giving rise to this suit and involved neither Party to the Subcontract. (Doc. 31-2, at 2.) Barry's two personal trips to the Atlanta area years

18

prior are even more attenuated and bear no relationship at all to the transaction at issue. Thus, Inflow has failed to present any evidence establishing a substantial nexus between Barry's contacts with Georgia and the current lawsuit. As such, these contacts cannot be the basis of personal jurisdiction.

    b. *Fair Play and Substantial Justice*

Despite finding neither ACS or Barry has sufficient minimum contacts with the state of Georgia, the Court must also examine whether the fair play and substantial justice factors weigh in favor of exercising personal jurisdiction. "In some cases, 'upon a lesser showing of minimum contacts than would otherwise be required,' the court may find it reasonable to assert personal jurisdiction after engaging in the fair play and substantial justice inquiry." United States v. ETJ Mgmt., Inc., No. 07-22770-CIV, 2008 WL 4998796, at *5 (S.D. Fla. Nov. 20, 2008) (quoting Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253, 259 (11th Cir. 1996). In making this inquiry, the court considers

> the burden on the defendant in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the states in furthering fundamental substantive social policies.

Robinson, 74 F.3d at 259 (citing Burger King, 471 U.S. at 477).

19

Here, none of these factors justify exercising personal jurisdiction despite insufficient minimum contacts. While the burden on ACS of traveling to Georgia is not significant, neither is the burden on Inflow to travel to Florida. It is clear from the facts of this case Inflow regularly does business in and sends representatives to the state of Florida. (Doc. 31-2, at 3.) Thus, Inflow can easily obtain convenient and effective relief by bringing a suit against ACS in Florida. Additionally, none of the remaining factors compel the Court to lessen the required minimum contacts to exercise personal jurisdiction. See ETJ Mgmt., 2008 WL 4998796, at *5 (finding the isolated mailing of a deed to the plaintiff in Florida when the heart of the conduct giving rise to the claim occurred in Maryland did not justify lessening minimum contacts threshold).

In short, Inflow has failed to establish a prima facie case of personal jurisdiction over ACS or Barry because their contacts with Georgia are too attenuated to satisfy the minimum contacts analysis, and the notions of fair play and substantial justice do not support finding otherwise. To exercise such jurisdiction would violate ACS and Barry's rights under the Due Process Clause of the Fourteenth Amendment. Therefore, ACS's motion to dismiss Inflow's third-party complaint (Doc. 31) is **GRANTED**.

## IV.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that TEAM's motion to dismiss Counts I and II of Inflow's counterclaim (Doc. 14) is **GRANTED;** ACS's motion to dismiss Inflow's third-party complaint (Doc. 31) is **GRANTED;** and Inflow's motion to amend its third-party complaint and summons (Doc. 43) is **DENIED** because the Court lacks personal jurisdiction over ACS and Barry, so any amendment would be futile.  The Clerk is **DIRECTED** to **TERMINATE** Advanced Coating Services, Inc. as a Party to this action.

**ORDER ENTERED** at Augusta, Georgia this _6th_ day of March, 2025.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA